UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ESSIE FOSTER, et al., | ) |
| Plaintiffs, | ) |
| Vs. | ) Case No. 4:10CV2369 RWS |
| MISSOURI DEPT. OF HEALTH AND SENIOR SERVICES, et al., | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Essie and Ralph Foster were the owners and operators of Y.I.W. Home Healthcare, Inc., a provider of in-home care services for elderly Medicaid recipients.  The Department of Health and Senior Services (DHSS) is the Missouri agency responsible for public health and aging issues, including in-home care Medicaid programs for the elderly and disabled.  DHSS grants in-home service provider contracts, investigates complaints against providers and maintains an employee disqualification list (EDL) of individuals who are disqualified from providing home healthcare. During the relevant time period, the Missouri Department of Social Services, MO HealthNet Division (formerly known as the Division of Medical Services and referred to by the parties and in this opinion as DSS) administered the Missouri Medicaid Program to healthcare providers for Medicaid recipients.  To qualify for Medicaid funding, a healthcare provider was required to qualify for and have a Medicaid Social Services Block Grant program through DHSS.

Until June 30, 2007, the Fosters and YIW received funding as a Medicaid healthcare provider.  However, on September 11, 2006, Essie Foster received a Notice of Violation from DHSS regarding a complaint of financial exploitation from one of her home healthcare patients.

Essie Foster and DHSS eventually resolved the dispute and entered into a settlement agreement. Paragraph 5 of the settlement agreement, signed by Essie Foster, states that "if [Essie Foster] fails to abide by the terms of this agreement, [Essie Foster] agrees to the immediate placement of [Essie Foster's] name on upon the Employee Disqualification List without further hearing or appeal."  Eight months later, Essie Foster received a letter from DHSS claiming that she was not in compliance with the settlement agreement.  Essie Foster disagreed, although there is no dispute that she was not in technical compliance with the terms of the settlement agreement.  She was subsequently placed on the EDL after several more letters and phone calls from defendants.  As a result, the Fosters and YIW lost their eligibility and funding to act as Medicaid home healthcare services providers.

The Fosters and YIW originally brought this 42 U.S.C. § 1983 action against DHSS and DSS as well as Debbie Hansen, supervisor of the EDL unit of DHSS, and Patricia Watkins, and attorney/investigator for DHSS.  On August 22, 2012, I granted summary judgment to defendant Missouri Department of Social Services, MO HealthNet Division and defendant Department of Health and Senior Services.  I also dismissed plaintiffs' claims against defendants Hansen and Watkins in their official capacities only.  Therefore, the only federal claims remaining in this case are the procedural and substantive due process claims against defendants Hansen and Watkins in their individual capacities, as well as state law claims against these two defendants for  tortious interference with contract expectancy, malicious prosecution, and abuse of process.  I gave defendants leave to renew their motion for summary judgment on the remaining claims, and the issues have now been fully briefed.  Because Hansen and Watkins are entitled to qualified immunity on the federal claims, plaintiffs' § 1983 claims will be dismissed with prejudice.  But I

will exercise my discretion and dismiss the remaining state law claims without prejudice for the reasons that follow.

## Standards Governing Summary Judgment

"Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting Fed.R.Civ.P. 56(c)(2)). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." Torgerson, 643 F.3d at 1042 (internal quotation marks and citations omitted). "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." Id. (internal quotation marks and citations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000), (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

issue for trial." Torgerson, 643 F.3d at 1042 (internal quotation marks and citations omitted) .

Discussion

Qualified immunity protects a government official from liability "unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." Henderson v. Munn, 439 F.3d 497, 501 (8th Cir. 2006) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir . 2005) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

To determine whether an official is entitled to qualified immunity, the Court asks the following two-part question: (1) whether the facts alleged, viewed in the light most favorable to the plaintiff, show that the defendant violated a constitutional or statutory right, and (2) whether the right at issue was clearly established at the time of the offending conduct. Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). The Court may decide which determination to make first, Pearson v. Callahan, 555 U.S. 223, 235–36 (2009), and "the defendants are entitled to qualified immunity unless the answer to both of these questions is yes." McCaster v. Clausen, 684 F.3d 740, 746 (8th Cir. 2012).

"A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." Mathers v. Wright, 636 F.3d 396, 399 (8th Cir. 2011) (internal quotation marks and citation omitted). "A general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously

been held unlawful." Winslow v. Smith, 2012 WL 4856169, *17 (8th Cir. Oct. 15, 2012) (internal quotation marks and citation omitted). "The unlawfulness must merely be apparent in light of preexisting law, and officials can still be on notice that their conduct violates established law even in novel factual circumstances." Nelson v. Correctional Medical Services, 583 F.3d 522, 531 (8th Cir. 2009) (internal quotation marks and citation omitted).

Plaintiffs' claims are rooted in the Due Process Clause of the Fourteenth Amendment, which provides that "[n]o State . . . shall . . . deprive any person of life, liberty, or property, without due process of law." U.S.Const. amend. XIV, § 1. Plaintiffs claim that they had a right to notice before Essie Foster was placed on the EDL, and that the failure to provide notice, "in light of the punitive effect said placement had on plaintiff Essie Foster and her employer, almost constitutes a purposeful act." Plaintiffs are not claiming that they were deprived of a property interest in the provider agreement by defendants' conduct.

"In order to establish a procedural due process violation, a plaintiff must prove that he or she was deprived of an opportunity granted at a meaningful time and in a meaningful manner for a hearing appropriate to the nature of the case." Keating v. Nebraska Public Power Dist., 562 F.3d 923, 928 (8th Cir. 2009). "Generally, where deprivations of property are authorized by an established state procedure, due process is held to require predeprivation notice and hearing in order to serve as a check on the possibility that a wrongful deprivation would occur." Id. (internal quotation marks and citation omitted). "Due process is a flexible concept, however, and calls only for such procedural protection as the particular situation demands." Moore v. Warwick Pub. School Dist. No. 29, 794 F.2d 322, 327 (8th Cir. 1986). For this reason, the United States Supreme Court has recognized "two notable exceptions" to this rule: (1) "where

there is a need for quick action by the State when there is a compelling or overriding interest in a summary adjudication;" and (2) "where the deprivation results from a random and unauthorized act by a state actor." Keating, 562 F.3d at 928. Where the Supreme Court has excused a pre-deprivation hearing because of the need for quick action, it "has emphasized the availability of a prompt post-deprivation administrative hearing to challenge the governmental action in finding that due process was satisfied." Moore, 794 F.2d at 327.

"To breach the shield of qualified immunity by establishing a violation of substantive due process rights by an official, a plaintiff must show (1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the official was shocking to the contemporary conscience." Winslow, 2012 WL 4856169 at *10 (quoting Flowers v. City of Minneapolis, 478 F.3d 869, 873 (8th Cir. 2007)). "Only in the rare situation when the state action is truly egregious and extraordinary will a substantive due process claim arise." Winslow, 2012 WL 4856169 at *15 (internal quotation marks and citation omitted). "Substantive due process is concerned with violations of personal rights so severe, so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power." Id. (internal quotation marks and citation omitted).

Even when the facts are considered in the light most favorable to plaintiffs, any rights they may have had to notice before Essie Foster's placement on the EDL in accordance with the terms of the settlement agreement were not sufficiently clear such that defendants would understand that their actions could violate due process. Here, Essie Foster was not placed on the EDL based on the whim of defendants and without any process being given. Rather, Essie Foster

- 6 -

**agreed** that she would be "immediately place[d] . . . upon the EDL without further hearing or appeal" if she failed to comply with the terms of the settlement agreement.  This settlement agreement resolved the complaint brought by DHSS against Essie Foster.  That complaint was processed through the normal administrative process, and there is no dispute that Essie Foster, who was represented by counsel,  received due process in connection with that underlying claim.  There is also no dispute that Essie Foster did not literally comply with the terms of the settlement agreement,[1] that she was notified by defendants that DHSS believed her to be in non-compliance, and that she was warned that she would be placed on the EDL.  There is also no dispute that at the time this happened, she was an owner and operator of YIW.  Defendants made numerous attempts to resolve the issues of Essie Foster's compliance with the settlement agreement before she was placed on the EDL, including attempting to reach her and YIW by telephone.  Under these facts, it is not sufficiently clear that a reasonable official would understand that placing Essie Foster on the EDL without first providing her with formal administrative procedures to contest her placement on the list could violate plaintiffs' due process rights.  This is particularly true here, where Essie Foster had adequate post-deprivation remedies available to her, and she utilized them successfully.  Upon review of the agency decision, the state court set aside Essie Foster's placement on the EDL and reinstated her to her field of employment.  When faced with the terms of the settlement agreement, a reasonable official could have reasonably concluded under these facts that plaintiffs were provided all process due before Essie Foster was placed on the EDL.  As such, defendants are entitled to qualified immunity on plaintiffs' procedural due

---

[1] Although Essie Foster did make payments, she did not send the payments to the individual specified in the agreement or on the dates required by the agreement, nor did she provide ongoing evidence of her compliance with the agreement to DHSS.

process claim.

Plaintiffs rely on the same facts for their substantive due process claim, but defendants are entitled to qualified immunity on this claim as well because there is no evidence that this conduct shocked the contemporary conscience. At most, the facts may demonstrate carelessness or negligence, but that is insufficient to state a substantive due process claim. Plaintiffs basically admit as much when they argue that defendants' conduct "almost" amounted to a purposeful act. Because there is no evidence of the "brutal and inhumane abuse of official power" necessary to prevail on a substantive due process claim, defendants are entitled to qualified immunity on plaintiffs' substantive due process claim as well.

Without addressing the adequacy of plaintiffs' state law claims against defendants Hansen and Watkins, I decline to exercise jurisdiction over them. Generally, this Court only has jurisdiction to adjudicate claims based on either federal subject matter jurisdiction or diversity jurisdiction. 28 U.S.C. §§ 1331 & 1332. However, a "federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them all in one place." Carnegie-Mellon University v. Cohill, 484 U.S. 343, 349 (1988); see also 28 U.S.C. § 1367. Upon a determination that defendant is entitled to summary judgment on plaintiff's federal claim, the Court has discretion to dismiss without prejudice plaintiffs' attendant state law claims so that plaintiffs may pursue them in state court. See Miner v. Local 373, 513 F.3d 854, 866 (8th Cir. 2008); Willman v. Heartland Hospital East, 34 F.3d 605, 613-14 (8th Cir. 1994) (district court did not abuse discretion in declining to exercise jurisdiction over state law claims when it granted summary judgment to defendants less

than two weeks before trial); Rushing v. Simpson, 2009 WL 4825196, *9 (E.D. Mo. Dec. 11, 2009) (discretionary dismissal of state law claims upon decision to grant summary judgment to defendants on federal claims).  Dismissal is particularly appropriate in these circumstances, where plaintiffs' state law claims involve the conduct of state officials and the state courts have already spoken about this conduct.  For these reasons, the Court, in its discretion, dismisses plaintiff's state law claim without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that the second motion for summary judgment filed by defendants Hansen and Watkins [#55] is granted only to the following extent: plaintiffs' federal claims against defendants Hansen and Watkins are dismissed.

**IT IS FURTHER ORDERED** that plaintiffs' state law claims against defendants Hansen and Watkins are dismissed without prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 5th day of November, 2012.